# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

FRED W. HEFNER,

       Petitioner,

v.                                        Case No. 3:17-cv-24-J-32JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

       Respondents.

_____

## ORDER

### I.    Status

Petitioner Fred W. Hefner, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. He challenges a state court (Flagler County, Florida) judgment of conviction for two counts of burglary of an unoccupied conveyance (counts one and three) and two counts of petit theft (counts two and four).[1] He is currently serving an aggregate fifteen-year term of incarceration as a habitual felony offender.

---

[1] Count four of the Information for which Petitioner was tried was grand theft for the taking of Jessica Marinello's iPod, <u>see</u> Resp. Ex. A, and the jury found Petitioner guilty of grand theft as charged in the Information, <u>see</u> Resp. Ex. B at 282-83. However, at Petitioner's sentencing hearing, the trial court granted Petitioner's motion for new trial as to count four, finding that the state failed to present sufficient evidence of the replacement value of the iPod and its contents. Resp. Ex. C at 7. The parties then entered a stipulation that Petitioner's conviction for count four would be reduced to a conviction for petit theft. <u>Id.</u> at 6-7.

Doc. 1 at 1. Respondents filed a Response. <u>See</u> Doc. 10 (Resp.).[2] Petitioner filed a Reply. <u>See</u> Doc. 11. This case is ripe for review.

## II. Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such

---

[2] Attached to the Response are several exhibits. <u>See</u> Doc. 10-1. The Court cites to the exhibits as "Resp. Ex."

> as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."' Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

4

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[4] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth

7

Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.  Analysis

### *Ground One*

Petitioner argues that trial counsel was ineffective for failing to further pursue suppression of physical evidence after the trial court initially sustained an objection to such evidence based on a "defective chain of custody log." Doc. 1 at 4. Petitioner also argues that trial counsel was ineffective for failing to move for a mistrial after the trial court failed to conduct a section 90.403, Florida Statute, "balancing test" regarding this inadmissible evidence. Id.

To add context to Petitioner's claim, the Court summarizes the relevant record evidence. At trial, evidence technician Jason Prather testified that he collected and stored the following evidence in relation to Petitioner's case: a pair of black gloves and a small flashlight. Resp. Ex. B at 97-103. Prather explained that he brought a box containing this evidence to trial. Id. at 97-99. The state asked Prather if the box contained any markings indicating the evidence's chain of custody, to which Prather replied, "I don't see any initials." Id. at 98. Prather stated he brought a copy of the original evidence property receipt with him. Id. at 99. He explained that the original evidence property receipt was in his office. Id. at 101. When the state attempted to move the copy of the evidence receipt into evidence, trial counsel objected because it was not the original document. Id. The trial court sustained the objection because Prather had access to the original document. Id.

Officer Kenny Goncalves then testified that on the day of the burglaries, he responded to a 911 call reporting suspicious activity. Id. at 105. While canvassing the

subject area, he noticed a Honda vehicle with a broken window. Id. Goncalves knocked on the door of the home where the vehicle was parked and made contact with Jessica Marinello, the owner of the vehicle. Id. at 108. Marinello conducted an inventory of the vehicle and reported that her iPod was missing. Id. at 119. Goncalves then received a call that Officer Whitaker needed backup at a residence only two streets away. Id. at 108, 116-17. When Goncalves responded to the second residence, he immediately saw Petitioner hiding behind a column in the bushes. Id. He and Officer Whitaker asked Petitioner to get on the ground to which he refused. Id. at 108-10. Because Petitioner failed to comply with the officers' orders, Goncalves and Whitaker had to physically force handcuffs onto Petitioner to obtain custody. Id. at 110. Goncalves conducted a search incident to arrest during which he found a pair of black gloves, a flashlight, a bottle of cologne, and an iPod. Id. at 111. Engraved on the back of the iPod was the name Jessica Marinello. Id. at 119. The state then presented Goncalves with the evidence bag referenced during Prather's testimony. Goncalves looked inside of the evidence bag and positively identified that the bag contained the gloves and flashlight he found on Petitioner the night of the arrest.[6] Id. at 113. The state moved to admit the gloves and the flashlight into evidence, and trial counsel again objected based on an improper predicate. Id. at 113. The trial court overruled the objection because Goncalves was the officer who found the items. Id. at 113-14.

---

[6] Officers returned the bottle of cologne and the iPod back to the victims. Resp. Ex. B at 120.

Petitioner now alleges that had trial counsel filed a motion to suppress or further pursued his objection to this evidence, it would have been entirely excluded from trial. Petitioner raised this issue as ground one of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. I at 3-7. The trial court summarily denied the claim as follows:

> In Ground I the Defendant claims trial counsel was ineffective for failing to move to suppress certain physical evidence introduced by the state, after the trial judge sustained a defense objection to admission of a photocopy of the Flagler County Sheriff's evidence receipt rather than the actual receipt. TT 1, Vol. II, pages 98-102. However, the next witness, Deputy Goncalves, testified that he had removed the evidence directly from the Defendant during a search incident to the Defendant's arrest. TT, Vol. II, pages 111-114. Therefore[,] the evidence was properly admitted and trial counsel did not err by not filing a motion to suppress; counsel properly objected to the photocopy and the state was compelled to introduce the evidence in a different manner.
>
> Mr. Hefner further alleges that following the admission of this evidence - a pair of gloves and a flashlight - trial counsel improperly failed to move for a mistrial due to the trial court's failure to weigh the evidence to determine whether the probative value of the evidence was outweighed by the "unfair prejudice created by the evidence that is immaterial and therefore irrelevant to the charged offense". Motion at page 5. The charges include multiple robberies of unoccupied conveyances, in the middle of the night. These items were relevant parts of the state's overall circumstantial evidence case, as argued by the State in closing, in that the flashlight could be used to aid someone's vision as they viewed inside vehicles for items to steal, and the gloves could be used to prevent fingerprints. TT, Vol. II, page 233. Additionally[,] this claim fails because allegations of trial court error are properly raised on direct appeal and issues of this type are barred from consideration in motions for postconviction relief. <u>Jones v. State</u>, 699 So.2d 809 (Fla. 1s t DCA 1997). <u>See also</u> <u>Garcia v. State</u>, 949 So.2d 980, 990

> (Fla. 2006) (Raising a procedurally barred claim, couched in terms of ineffective assistance of counsel remains procedurally barred.) All claims in Ground I are summarily denied.

Resp. Ex. Q at 3. The Fifth District Court of Appeal per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. W-X. Thus, to the extent that the Fifth DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[7] After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this <u>Strickland</u> claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground One is due to be denied.

### *Ground Two*

Petitioner argues that trial counsel was ineffective for failing to move to suppress, seek a mistrial, or file a motion to dismiss based on the officers' lack of probable cause to arrest Petitioner for loitering and prowling. Doc. 1 at 5. He contends

---

[7] Respondents argue that this claim is unexhausted because Petitioner did not brief it during his postconviction appeal. Resp. at 9. However, in an abundance of caution and relying on the persuasive authority in <u>Cortes</u>, the Court declines to find this claim unexhausted, because "a petitioner who does file a brief in an appeal of the summary denial of a Rule 3.850 motion does not waive any issues not addressed in the brief." <u>Cortes v. Gladish</u>, 216 F. App'x 897 (11th Cir. 2007); <u>see also</u> Fla. R. App. P. 9.141 (briefs are not required upon summary denial of postconviction motions); <u>Darity v. Sec'y, Dep't of Corr.</u>, 244 F. App'x 982, 984 (11th Cir. 2007) (opining a defendant who chooses to file a brief upon summary denial of his post conviction motion is not required to raise all claims).

that at the time of his arrest, he was merely smoking a cigarette, and police had no legal means to arrest him. Id. He asserts that had trial counsel challenged Petitioner's arrest, the physical evidence (i.e., gloves, flashlight, bottle of cologne, and iPod) found on Petitioner during the search incident to arrest would have been suppressed as fruit of the poisonous tree. Id.

Petitioner raised this claim as ground two of his Rule 3.850 motion. Resp. Ex. I at 8-12. The trial court summarily denied the claim, finding in relevant part:

> In Ground II Mr. Hefner alleges trial counsel was ineffective for failing to object and move to suppress evidence and/or move for a mistrial or make a pretrial motion to dismiss where fruits of a burglary were found during an illegal search. These claims revolve around Mr. Hefner's claim that the police never had probable cause to arrest him for loitering and prowling, which he was not charged with, but was used to justify the search incident to arrest. Deputy Goncalves had testified that Mr. Hefner was originally arrested for loitering and prowling, and that after a search incident to arrest, he found black gloves, a flashlight, a bottle of cologne, and an iPod on Mr. Hefner's person. TT, Vol. II, pages 111 and 123.

> Deputy Goncalves testified that he and another officer had responded to a call of suspicious activity in the area at approximately 3:30 in the morning and that he observed a Honda vehicle with the window broken out. He then knocked on the door at that address and had the car owner inventory the car. An engraved iPod and other property were reported missing. Deputy Goncalves then responded to Deputy Whitaker as a backup unit in the same neighborhood; his first observation appeared to be a person hiding behind a column in the bushes of the residence. The person hiding refused to comply with the officers' commands, was ultimately taken into custody for loitering and prowling, searched, and property stolen from the vehicles at both locations were recovered from Mr. Hefner's person, including the personalized iPod. TT, Vol. II, pages

13

105-113 and 116-120, 123. <u>See also</u>, charging affidavit at page 2.

> The crime of loitering and prowling requires proof of two elements, both of which must be committed in the officer's presence prior to arrest. First, the State must show the arresting officer observed the defendant loitering and prowling in a manner not usual for law-abiding citizens, and second requires the arresting officer to articulate specific facts which, when taken together with rational inferences from those facts, reasonably warrant a finding that a breach of the peace is imminent or the public safety is threatened. Circumstances to be considered in determining whether a breach of the peace is imminent or public safety is threatened are whether the person takes flight, refuses to identify himself, or **attempts to conceal himself**. <u>TB. v. State</u>, --- S.3d ---, 39 Fla. L. Weekly D1266b (Fla. 4th DCA 2014) (emphasis added); <u>D.S.D. v. Stale</u>, 997 So. 2d 1191, 1193 (Fla. 5th DCA 2008). The record in the case <u>sub</u> <u>judice</u> clearly demonstrates probable cause to arrest Mr. Hefner for loitering and prowling. Counsel's actions were not deficient.

Resp. Ex. Q at 4-5. Petitioner, through postconviction counsel, appealed the trial court's denial, addressing this issue in Petitioner's brief. Resp. Ex. U at 11-20. The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. W-X.

To the extent that the Fifth DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. At trial, Goncalves testified that when he pulled up to the second residence as backup to Whitaker, he saw Petitioner hiding in the bushes. Resp. Ex. B at 109. Goncalves explained that Petitioner appeared to be engaging in purposeful concealment of himself. <u>Id.</u> When the officers asked Petitioner to reveal himself and get on the ground, Petitioner refused, prompting the

officers to use force to take Petitioner into custody. Id. at 108-10. After officers arrested Petitioner, they alerted the homeowner at the second residence, Daniel Campbell. Id. at 108-10. Campbell testified at trial that when officers alerted Campbell, he came outside to find Petitioner in handcuffs lying on his property and advised officers that he did not know Petitioner nor did he give Petitioner consent to be on his property. Id. at 148-49. The officers had probable cause to arrest Petitioner. As such, after a review of the record and the applicable law, the Court concludes that the state court's finding that Petitioner failed to satisfy the deficiency prong of Strickland was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Two is due to be denied.

### Ground Three

The Petition does not set forth a distinct claim. Instead, Petitioner alleges "same claim as postconviction motion. As it stands. Court's order is strange, to say the least, and open to interpretation. But, does not address counsel's ineffectiveness." Doc. 1 at 7. However, Petitioner's Reply clarifies that in this Ground, he argues that trial counsel was ineffective for failing to move for a mistrial and/or judgment of acquittal when the state failed to refute Petitioner's "reasonable hypothesis of innocence." Doc. 11 at 7. He claims that trial counsel should have argued that the state failed to present DNA evidence; Petitioner found the iPod and the cologne on the beach where he was

"turtle-watching"; and he was riding his bike that night, so he needed a flashlight and gloves to protect his hands from the cold weather. Id. at 8-9.

Petitioner raised this claim as ground three of his Rule 3.850 motion. Resp. Ex. I at 12-15. The trial court summarily denied the claim as follows:

> In Ground III Mr. Hefner asserts that trial counsel was ineffective for failing to move for a mistrial and/or judgment of acquittal when the state did not refute his reasonable hypothesis of innocence: that he was out for a walk on the beach, found abandoned items, and was on his way home when arrested. The trial court record conclusively refutes this claim. The Defendant's testimony was not found to be credible by the jury.
>
> Trial counsel did move for a judgment of acquittal at the close of the State's case and again at the conclusion of all the evidence. TT, Vol. II pages 172-178 and 218-219. In denying the Motion for Judgment of Acquittal both times, the trial court found the circumstantial evidence to be very strong.

Resp. Ex. Q at 5. The Fifth DCA per curiam affirmed the trial court's summary denial of Petitioner's Rule 3.850 motion without a written opinion. Resp. Exs. W-X.

To the extent that the Fifth DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[8] The trial court correctly noted that trial counsel moved for a judgment of acquittal after the state rested its case. See Resp.

_____

[8] Respondents again argue that this claim is unexhausted because Petitioner failed to brief it during his appeal of the trial court's summary denial of his Rule 3.850 motion. Resp. at 10. The Court declines to find this claim unexhausted. See Cortes, 216 F. App'x at 897; see also Fla. R. App. P. 9.141 (briefs are not required upon summary denial of postconviction motions); Darity, 244 F. App'x at 984 (opining a defendant who chooses to file a brief upon summary denial of his postconviction motion is not required to raise all claims).

Ex. B at 172-78. The trial court denied Petitioner's motion. Id. Petitioner then testified at trial that he was living near Marinello and Campbell's residences and had been walking the beach the night the offenses occurred. Id. at 198-99. He testified that it was cold that night, so he was wearing a leather jacket and gloves. Id. at 202-03. He further stated that he was carrying a flashlight because it was dark outside and "cops harass you" if you do not have one on your bicycle. Id. at 203. According to Petitioner, he found the bottle of cologne and the iPod lying on the ground during his walk. Id. at 200-01. He testified that at some point he saw law enforcement, and out of fear of being harassed by the officers, he decided to hide in Campbell's driveway where he was ultimately arrested. Id. at 204-05. Following Petitioner's testimony, trial counsel renewed his motion for judgment of acquittal. Id. at 218 The trial court denied Petitioner's renewed motion, finding that the circumstantial evidence was sufficient to submit the case to the jury. Id. at 219. The jury obviously rejected Petitioner's version of events.

Notably, in denying trial counsel's renewed motion for judgment of acquittal, the trial court considered Petitioner's trial testimony outlining the exact version of events that Petitioner now asserts trial counsel should have argued to the trial court. As such, Petitioner cannot demonstrate deficient performance or prejudice under Strickland. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal

law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Three is due to be denied.

### Ground Four

Petitioner argues that trial counsel was ineffective for failing to request a Richardson[9] hearing when the state, during discovery, failed to disclose evidence of the gloves, flashlight, and map. Doc. 1 at 8.

Petitioner raised this claim as ground four of his Rule 3.850 motion. Resp. Ex. I at 16-22. The state filed a response. Resp. Ex. N at 8-9. Thereafter, the trial court summarily denied the claim, finding in pertinent part:

> In Ground IV the Defendant alleges that trial counsel was ineffective for failing to object and request a Richardson[ ] hearing when the State presented evidence that was not disclosed in discovery. The evidence complained of is the gloves and flashlight discussed supra in Ground I, and a map of the area where the burglaries occurred. The map was used by Deputy Goncalves as a demonstrative aid. The State's Discovery Exhibit provided to defense counsel on April 29, 2010 disclosed objects obtained from the Defendant and papers or objects not obtained from the Defendant. Officer Goncalves' map was initially not entered into evidence because it was not previously disclosed. TT, Vol. II, page 116.[FN3] Because the existence of the objects obtained from the Defendant were disclosed, and the map was not entered into evidence, Mr. Hefner suffered no prejudice. Trial counsel was not remiss by not requesting a Richardson hearing. Consistent with these findings, there was no deficient performance by counsel or prejudice to the Defendant.
>
> FN3 – The map was admitted into evidence for rebuttal purposes after the Defendant testified. TT, Vol. II, pages 221-225.

---

[9] Richardson v. State, 246 So. 2d 771 (Fla. 1971).

Resp. Ex. Q at 5-6. The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. W. To the extent that the Fifth DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

"A <u>Richardson</u> hearing is held to determine whether the State committed a discovery violation in contravention of the Florida Rules of Criminal Procedure and, if so, whether the non-compliance resulted in prejudice to the defendant's ability to prepare for trial." <u>Cisneros v. McNeil</u>, No. 8:05-cv-762-T-27TGW, 2008 WL 1836368, at *5 (M.D. Fla. Apr. 23, 2008). Initially, whether the state's actions amounted to a <u>Richardson</u> violation is a question of state law, and thus, the Court defers to the state court's determination that trial counsel was not deficient for failing to request such a hearing. <u>See</u> <u>Huddleston v. Sec'y Dep't of Corr.</u>, No. 8:16-cv-76-T-02AAS, 2019 WL 339225, at *5 (M.D. Fla. Jan. 28, 2019) (holding that "[w]hile the issue before the court is one of ineffective assistance, a question cognizable on federal habeas review, the underlying issue of whether a discovery violation occurred under Florida law and whether counsel should have objected and moved for a <u>Richardson</u> hearing is a question of state law" that binds the court).

In any event, Petitioner cannot demonstrate prejudice under <u>Strickland</u>. The map depicted the distance between Campbell and Marinello's residences. The state admitted the map into evidence during Goncalves' rebuttal testimony and over trial counsel's objection that the map had not been previously disclosed during discovery. Resp. Ex. B at 221-23. Nevertheless, even if the map had been excluded, Goncalves

would have still been able to testify that he was familiar with the area, and that the residences were near each other and about six or seven houses from the beach. <u>Id.</u> at 222-24, 226-27. As such, Petitioner cannot demonstrate that the exclusion of the map, which was merely a visual aid to Goncalves' testimony, would have created a reasonable possibility of a different outcome. Further, prior to trial, the state filed a discovery list detailing the tangible items that the state intended to use during trial, and "papers or objects obtained from defendant" was one of the disclosed items. Resp. Ex. N at 421-22. The gloves and flashlight were obtained from Petitioner at the time of his arrest. Resp. Ex. B at 112-13.

In sum, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Four is due to be denied.

### ***Ground Five and Ground Six*[10]**

Petitioner argues that the trial court violated his due process rights when it instructed the jury on "stealth" when there was no evidence that Petitioner "stealthily"

---

[10] In Ground Five of the Petition, Petitioner alleges that "trial counsel committed fundamental error by giving erroneous stealthy jury instruction over objection." Doc. 1 at 9. However, in his Reply, Petitioner clarifies that he is arguing that "the trial court committed fundamental error in giving 'stealthy' jury instruction." Doc. 11 at 13. Petitioner raised an identical claim in his Rule 3.850 motion. Resp. Ex. I at 23-27. The trial court summarily denied the claim because it was previously raised and rejected during Petitioner's direct appeal. Resp. Ex. Q at 6. Because the underlying allegations of Ground Five are identical to Ground Six, and because Ground Six was fully adjudicated in state court, the Court addresses Ground Six herein, and denies Ground Five for the same reasons.

committed the burglaries. Doc. 1 at 10. To add context to this claim, the Court

summarizes the relevant record evidence.  During the jury charge conference, the

following exchange occurred between the trial court and Petitioner's trial counsel (Mr.

Kocijan) regarding the instructions for each count of burglary:

> THE COURT: Do you have any objection to the other jury instructions?
>
> . . .
>
> MR. KOCIJAN: -- where it says kind of in the middle of the first big paragraph "You may infer that Fred Wesley Hefner had the intent to commit a crime inside a conveyance if the entering of the conveyance was done stealthily and without consent of the owner or occupant."
>
> THE COURT: Right.
>
> MR. KOCIJAN: I do not believe there has been a shred of evidence that he stealthily tried to do anything.
>
> I believe there was testimony that was asked by the State if Mr. Hefner had consent to be in a vehicle, which was answered; but there's been nothing to show that -- that  the way that the vehicles were entered were done in a stealthy manner at all.
>
> THE COURT: Throwing a rock through an automobile parked in the driveway at 3:30 in the morning is about as stealthily as you can get.
>
> MR. KOCIJA: I don't believe that. I think that was -- basically, if you --if --if that's the testimony, which I believe it -- it was a paver, I don't believe that's done in a stealthy manner. I believe trying to get into a car stealthily would not be smashing a window.
>
> THE COURT: That's for the jury to determine. They'll determine whether or not it was stealthily.

Resp. Ex. B at 184-88. The trial court then instructed the jury that to find Petitioner guilty of the burglary charges, the state must prove the following two elements beyond a reasonable doubt: Petitioner entered the conveyances owned by or in the possession of Campbell (count one) and Marinello (count three); and at the time of entering the conveyances, Petitioner had the intent to commit an offense in that conveyance. Id. at 259, 62. The trial court further instructed that the jury may infer that Petitioner had the intent to commit a crime if the entering of the conveyances was done stealthily and without consent of the owner or occupant. Id. at 259, 62. The jury found Petitioner guilty of both counts of burglary.

As his sole ground on direct appeal, Petitioner, through appellate counsel, alleged that the trial court abused its discretion in reading the discretionary "stealthy" jury instruction, arguing that Petitioner's actions in using a rock to break Marinello's car window did not amount to a stealth action, and that the trial court failed to define "stealth" for the jury. Resp. Ex. E. The state filed an answer brief arguing that the trial court did not abuse its discretion, and explaining that the following evidence demonstrated stealth: "[Petitioner] waited until 3:30 in the morning, when no one else was around, before entering the neighborhood on foot and approaching the two vehicles. Further, when he saw the police roaming in the neighborhood, [Petitioner] attempted to conceal himself and then resisted their efforts to detain him for an investigation." Resp. Ex. F. at 4-5. Finding no merit in Petitioner's claim, the Fifth DCA per curiam affirmed Petitioner's judgment and convictions without a written opinion. Resp. Ex. G-H.

A review of the state's answer brief on direct appeal, see Resp. Ex. F, implies that the appellate court affirmed Petitioner's convictions and sentences on the merits. If the appellate court addressed the merits, Petitioner is not entitled to federal habeas relief because the state court's adjudication of this claim is entitled to deference under AEDPA. "Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'" Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). "If there is no basis in the record for the instruction given, such error may raise a 'substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations,' and reversal may be required." Pesaplastic, C.A. v. Cincinnati Milacron Co., 750 F.2d 1516, 1525 (11th Cir. 1985) (quoting McElroy v. Firestone Tire & Rubber Co., 894 F.2d 1504, 1509 (11th Cir. 1990)).

Evidence that the burglaries were committed at 3:30 a.m. when no one else was around and while Petitioner was on foot, supports the reading of the stealth instruction. Further, assuming that the stealth portions of the burglary instructions were erroneous, Petitioner has not demonstrated that the instructions were so misleading as to render the trial unfair. Evidence demonstrated that both vehicles had been broken into and Petitioner was apprehended in Campbell's yard. When he was arrested, Petitioner had on his person Campbell's bottle of cologne, Marinello's iPod, a pair of gloves, and a flashlight. The stealth portion of the burglary instruction did

not negate this evidence, nor did it contradict any of the elements of the burglary instructions. In sum, any alleged error in the burglary instruction was harmless. <u>See, e.g.</u>, <u>Mansfield v. Sec'y, Dep't of Corr.</u>, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[C]onstitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict."). Therefore, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Six and Ground Five are due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall

serve as a denial of the motion.[11]

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of December, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Fred W. Hefner, #598230
       Rebecca Rock McGuigan, Esq.

---

[11] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.